## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CARL C. GREER and | ) | |
| THOMAS A. FLOYD, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.    08 C 4958 |
| | ) | Judge Blanche M. Manning |
| | ) | |
| ADVANCED EQUITIES, INC. | ) | |
| KEITH DAUBENSPECK, and | ) | |
| DWIGTH BADGER, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This is a case about alleged fraud in the sale and transfer of securities. The plaintiffs, Carl Greer and Thomas Floyd, allege that they purchased stock in a company called Pixelon, Inc. on the advice of Keith Daubenspeck and Dwight Badger, two officers at defendant Advanced Equities, Inc. ("AEI"). According to the Corrected Amended Complaint ("CAC"), the defendants "induced Greer and Floyd to invest sizeable amounts of money in a venture Defendants knew or should have known was a sham."

Included in the CAC are three counts under federal securities laws: Count III alleges a violation under Section 12(a)(2) of the Securities Exchange Act of 1933 and Counts IV and V allege violations under Section 10(b) of the Securities Exchange Act of 1934. The remaining three counts allege state law claims for breach of contract, breach of fiduciary duty, and common law fraud. The defendants have moved to dismiss the federal securities law counts on the grounds that they are barred by the statute of limitations and, in the alternative, are not pleaded with sufficient particularity. The defendants further move to dismiss the state law claims on the ground that the court should decline to exercise supplemental jurisdiction given the failure of the federal claims. For the reasons stated below, the motion to dismiss is granted in part. The plaintiffs are given 21 days from the date of entry of this order to replead.

## I.    Background

Briefly, the plaintiffs allege that in the fall of 1999, they were approached by an agent of AEI, Paul Wilkowski, to become customers of AEI based on AEI's "superior knowledge regarding potentially lucrative investments." According to the plaintiffs, they, in reliance on the defendants' advice and counsel, invested a total of $4,083,345 in several opportunities

recommended by AEI.  One of these opportunities was Pixelon, Inc., which was claimed to be the first full-screen, full-motion, TV-quality internet broadcaster.

AEI prepared an Amended and Restated Private Placement Memorandum dated August 25, 1999 ("Placement Memorandum"), to solicit investors to purchase Series A Preferred Stock in Pixelon.  On October 22, 1999, Greer and Floyd paid $1,942,500 for 1,110,000 shares of Pixelon stock.

In December 1999, the defendants issued a Supplement to the August Placement Memorandum, in which AEI disclosed that Pixelon would need an additional $21.5 million to fund operations through June 2000–more than twice the amount originally represented to the plaintiffs.  The Supplement also disclosed, among other things, that: (1) Pixelon's capitalization had changed dramatically since the August Placement Memorandum; (2) the costs of an event to launch the Pixelon network substantially exceeded the expected costs; (3) there were nine material contracts that Pixelon had entered into that had not been previously disclosed; (4) material litigation, including employment disputes involving significant managerial positions, had been filed against Pixelon prior to the date of the plaintiffs' investment; (5) Pixelon had borrowed $3.55 million from company investors in October and November 1999 to fund its operations; and (6) David Stanley, the founder, Chief Technology Officer and Chairman of the Board, who had been represented to the plaintiffs as integral to the success of Pixelon, had terminated his relationship with Pixelon.  The plaintiffs later discovered that Stanley was a convicted embezzler and a fugitive from the law.

After receiving the supplement, the plaintiffs met with the defendants because they were "concerned about the condition of Pixelon as disclosed in the Supplement and wanted their money back."  CAC, ¶ 83.  While the defendants indicated that they could not give the plaintiffs their money back, they proposed an arrangement whereby the plaintiffs could recoup their money through a consulting agreement.  According to the plaintiffs, in addition to compensating the plaintiffs for their initial investment, the consulting agreement included the transfer of certain securities and equity interests to the plaintiffs in consideration for their not filing suit against the defendants.  The defendants did not perform their obligations under the consulting agreement and Pixelon ended up filing for bankruptcy.

The parties executed several tolling agreements and extensions of the tolling agreements addressing various aspects of their dispute.  However, at the time of the filing of the complaint in the instant suit, all of the tolling agreements had expired.

## II.     Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff.  *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007)(citations omitted).

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) *(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic* ). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n. 14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim for relief that is plausible on its face.").

As noted recently by the United States Supreme Court, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

## III.    Analysis

### A.    Count III–Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l

Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l, creates liability for any person who "offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, [or] by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. . . ." The plaintiffs allege that AEI's August Placement Memorandum for Pixelon contained numerous misleading statements as well as omitted numerous material facts.

1.      Statute of Limitations

        The defendants first contend that this claim is barred by the statute of limitations.  "A statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'"  *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841 (7th Cir. 2008)(citation omitted).

        The statute of limitations for a claim under Section 12(a)(2) is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m; *see also Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995)("Inquiry notice starts the running of the statute of limitations 'when the victim of the alleged fraud became aware of facts that would have led a reasonable person to investigate whether he might have a claim.'")(citation omitted). In other words, the statute of limitations begins to run when "the plaintiff learns or should have learned through the exercise of ordinary diligence ... enough facts to enable him by such further investigation as the facts would induce in a reasonable person to sue within a year." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997)(citation omitted).

        A plaintiff may plead himself out of court by pleading facts sufficient to show that his claim is time-barred. *Whirlpool*, 67 F.3d at 608.  The defendants note that the plaintiffs alleged that they became "concerned" about the financial condition of Pixelon and indeed, asked for their money back, as early as December 1999, just two months after they initially invested. Accordingly, the defendants contend that the plaintiffs claim under Section 12(2) of the 1933 Act was barred within one year of that time, or as of December 2000.  The defendants further note that the tolling agreement referred to in the CAC does not save the plaintiffs because it was executed in October 2001, ten months after the plaintiffs' claim had expired.[1]

---

        [1]The defendants attach a copy of one tolling agreement to their motion to dismiss and assert that because the plaintiffs discuss the agreement in the CAC and it is central to the allegations of their claims, the court may consider the tolling agreement without converting the motion to dismiss to a motion for summary judgment.  While it is true that the plaintiffs discuss the tolling agreements in the CAC, they are not central to the allegations of their complaint; rather, as noted on page 5, in section III.A.1., they are central to the defendants' statute of limitations defense, which the plaintiffs need not plead around.  In any event, the court notes that the plaintiffs refer to several tolling agreements in the CAC and the defendants attach only one tolling agreement to their motion to dismiss; therefore, even if the court were to consider the tolling agreement attached to the motion to dismiss, it would only provide part of the picture as alleged by the plaintiffs.  As such, even if the tolling agreement that the defendants attach to their motion were properly before it, the court would not be in a position to issue a definitive ruling without all of the facts relating to the tolling agreements before it.

The plaintiffs, however, do not rely on the alleged tolling agreements. Rather, the plaintiffs argue that the defendants' statute of limitations defense is barred by the doctrine of equitable estoppel. According to the plaintiffs, the defendants, starting in December 1999, "actively and intentionally induced Greer and Floyd not to file suit through Defendants' admission of responsibility and repeated promises to make Greer and Floyd whole for their losses." Plaintiffs' Response at 4, Dkt. #34. Apparently, Greer and Floyd allegedly relied on oral representations by the defendants to make them whole for several months. *See* CAC ¶ 84 ("[The defendants] promised to continue to try to find ways to make Green and Floyd whole and, as an alternative to immediate litigation, the parties continued these discussions for several months.").

Then, "[i]n September 2000, the defendants finally proposed an arrangement that they said would give Greer and Floyd the opportunity to recoup their investments." *Id*. at ¶ 85. Specifically, the plaintiffs allege that the defendants proposed that the parties enter into a consulting agreement that would serve as a vehicle to repay Greer and Floyd for their lost investments and expenses, and compensate them for deferring suit, by transferring to them various equity interests and rights to equity interests in exchange for the plaintiffs' consulting services to AEI ("Consulting Agreement"). *Id*. at ¶ 86. The parties entered into the Consulting Agreement on September 18, 2000, but the plaintiffs never received any of the securities that were purportedly promised to them under the terms of the Consulting Agreement and subsequent amendments.

"The doctrine of equitable estoppel allows the plaintiff to extend the statute of limitations if the defendant has done something that made the plaintiff reasonably believe that he had more time to sue." *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002)(citations omitted). Under the doctrine of equitable estoppel, a plaintiff has the burden to demonstrate that the defendant took "active steps to prevent the plaintiff from suing in time" and the plaintiff actually and reasonably relied on the defendant's conduct or representations. *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006)(citations and internal quotation marks omitted).

With respect to the plaintiffs' equitable estoppel argument, the defendants contend that the plaintiffs have pled themselves out of court because they "have not alleged any action by Defendants that would have prevented Plaintiffs from bringing their suit in a timely manner, nor do they articulate anything done by Defendants to conceal information needed by Plaintiffs to assert their claims." Reply at 3, Dkt. #37. The defendants further contend that the plaintiffs cannot rely on the Consulting Agreement because any purported representations made in the Consulting Agreement did not prevent the plaintiffs from filing suit. Finally, the defendants argue that the plaintiffs have not alleged actual and reasonable reliance.

Contrary to the defendants' assertions, "complaints need not anticipate and attempt to plead around defenses." *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)(citations omitted). Instead, "[r]esolving defenses comes after the complaint stage." *Id.* While it is true

that the plaintiffs could have pled themselves out of court based on the allegations of the complaint, *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005)("Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.")(citations omitted), their purported *failure* to properly allege facts necessary to establish equitable estoppel is not a basis for dismissal because, as already noted, the plaintiffs need not attempt to plead around anticipated defenses. Because the question of whether the plaintiffs can establish equitable estoppel is not properly resolved at the motion to dismiss stage, the defendants' motion to dismiss based on the statute of limitations is denied.[2]

### 2.      Rule 9(b)–pleading with particularity

Rule 9(b) requires the "who, what, when, where, and how" of the circumstances of the fraud or mistake. *Tillman v. U.S. Energy Sav. Corp.*, No. 08 C 1641, 2008 WL 2754813, at *3 (N.D. Ill. Jul. 14, 2008)(*quoting Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1044 (N.D. Ill. 2001); Fed. R. Civ. P. 9(b) ("in all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity"). Thus, it is well-established that a plaintiff alleging fraud must plead "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1990). The requirements of Rule 9(b) apply to a claim made pursuant to Section 12(2) of the Securities Act. *Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990)(affirming dismissal of Section 12(2) claim because of the plaintiffs' failure to plead the claim with particularity). In addition, the plaintiffs must allege "circumstances that might separate fraud from the benefit of hindsight." *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990).

---

[2]As noted by the defendant, the Seventh Circuit has, in at least one instance, affirmed dismissal of a securities fraud action on statute of limitations grounds, even when estoppel was raised by the plaintiff in response to the assertion of the statute of limitations defense. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995). In *Whirlpool*, the plaintiff asserted that the defendant was equitably estopped from asserting the statute of limitations because "the explanations [the plaintiff] received for GN's poor performance-primarily the general economic recession-concealed the defendants' alleged fraud." *Id.* The Seventh Circuit rejected this argument stating that "in light of our determination that the information Whirlpool needed to uncover the fraud was in the public domain, GN's continued attempts to explain away the discrepancies between the revised projections and the actual earnings could not have prevented Whirlpool from filing its complaint on time." *Id.* Despite the relatively sparse facts contained in the Seventh Circuit decision on this issue, it appears that the instant case is distinguishable. In this case, the plaintiffs point to specific discussions and agreements which caused them not to file suit in contrast to the defendant's statements in *Whirlpool* about the "general recession." In any event, based on the Seventh Circuit's clear authority that a limitations defense is best resolved after factual development of the claims has occurred, the court is unwilling to dismiss the plaintiffs' claim at this stage of the litigation.

The defendants assert that Count III fails because the plaintiffs have failed to plead fraud with particularity. According to the defendants, the plaintiffs fail to allege the "what, when, where, and how" of any of the representations. Because the parties address this count in parts, the court will also. As the parties have portrayed the count, the first part addresses statements and omissions made in the Placement Memorandum. The second part deals with statements made by Paul Wilkowsi, presumably as an agent of AEI.

The CAC alleges that the false and misleading statements were contained in the Placement Memorandum. It further alleges that defendants Daubenspeck and Badger, plus AEI employee Paul Wilkowski, who is not a defendant, participated in the preparation of and reviewed and approved both the use of the Placement Memorandum and the representations made in the Placement Memorandum in connection with the sale of Pixelon stock to the plaintiffs. According to the CAC, the plaintiffs agreed on October 22, 1999, to invest almost $2 million in Pixelon based on the representations contained in the Memorandum, several of which, as described below, were purportedly untrue or omitted material information.

The CAC then sets out the statements in the Placement Memorandum that were allegedly fraudulent. These include that: (1) $20,650,000 was sufficient (with funds already raised) to finance Pixelon's operations through June 2000, even though "the defendants knew when they induced Floyd and Greer to invest in Pixelon that Pixelon would require substantially more" than that; (2) that the launch event for the product in October 1999 would cost no more than $7,000,000 even though the contracts with the performing artists alone exceeded the entire $7 million budget and Pixelon had contracts with other entities to pay $4 million for services related to the launch, none of which were listed in the "Material Contracts" section of the Placement Memorandum; (3) that Stanley developed Pixelon's technology; and (4) that Stanley was critical to the success of Pixelon's operations.

The plaintiffs also detail allegations regarding the material omissions that they contend should have been included in the Memorandum and were only later included in a December 1999 "Supplement"–just two weeks after the plaintiffs had already invested in Pixelon. Specifically, they allege that: (1) Pixelon actually needed an additional $21,500,000 to fund operations through June 1, 2000, which was more than double the amount originally represented in the Placement Memorandum; (2) Pixelon's capitalization had changed dramatically since the Placement Memorandum, including the previously undisclosed fact that the performers (and their managers) at the launch event were given warrants or grants in excess of 700,000 shares of Pixelon stock, diluting the investment of Floyd and Greer; (3) the costs of an event to launch the Pixelon network substantially exceeded the expected costs; (4) there were at least nine material contracts that Pixelon had entered into that had not been previously disclosed; (5) material litigation, including employment disputes involving significant managerial positions, had been filed against Pixelon prior to the date of the plaintiffs' investment; (6) Pixelon had borrowed $3.55 million from company investors in October and November 1999 to fund Pixelon's operations; and (6) David Stanley, the founder, Chief Technology Officer and Chairman of the Board, whose participation had been represented to the plaintiffs as integral to the success of

Pixelon, had terminated his relationship with Pixelon.

In addition, the plaintiffs allege that the defendants knew or should have known that Pixelon's technology was an adaptation of a common Windows Media Player computer program and that Stanley was a fugitive from the law and living under an assumed name after having embezzled over $1 million from his father's church. CAC, ¶¶32-34. The plaintiffs further allege that in November 1999, Wilkowski told Floyd that Stanley had been engaging in mismanagement and that his contract was going to be terminated.

The plaintiffs further contend in Count III that "If Advanced Equities, Daubenspeck, and Badger had fully and accurately disclosed all material facts, Greer and Floyd would not have purchased stock in Pixelon." CAC at ¶ 155.

Other than identifying the statements in the Placement Memorandum that they contend "all turned out to be false", the plaintiffs fail in their response to the motion to dismiss to point to any allegations in support of their contention that the difference between what the defendants said would happen and what actually happened is attributable to fraud. As noted by the Seventh Circuit:

> The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud.

*Dileo*, 910 F.2d at 627.

However, the defendants did not raise this particular Rule 9(b) argument until the reply brief. Normally, because the defendants raised the issue for the first time in their reply brief, the court would give the plaintiffs the opportunity to file a surreply. However, in light of the fact that the allegations are clearly deficient and the court is already dismissing another portion of this count with leave to replead, *see* below (dismissing allegations in Count III with respect to the allegedly false statements made by Wilkowski), in the interests of proceeding in the most efficient and cost-effective manner possible, the court dismisses this part of the count without prejudice.

The defendants next contend that in Count III, the plaintiffs fail in the CAC to allege with specificity the misrepresentations made by Wilkowski, who was an employee of AEI but is not named as a defendant. It is the court's understanding that Count III is based on alleged misrepresentations and omissions in the Placement Memorandum; thus, it is not clear how

Wilkowski's statements are relevant to the instant count.  The argument is apparently based on the allegation that "[d]efendants [here, presumably AEI through Wilkowski] provided Greer and Floyd with a prospectus and made oral representations to Greer and Floyd relating to the public offering of the Pixelon Series A Preferred Stock."  CAC at ¶ 150.  The plaintiffs also point to certain paragraphs that they assert contain the specifics regarding Wilkowski's "statements, misstatements, and omissions of material fact."  Response at 10 (*citing* ¶¶24-27, 29, 39, 41-41, 44-45).  Most of these paragraphs do not contain any indication that they were material misrepresentations.  For example, paragraphs 24 through 27 state the following respectively:

> 24.   Among other things, Wilkowski told Greer and Floyd that Pixelon was an up-and-coming internet company that was going to use a special technology developed by the company's founder, Stanley, to become the first provider of TV-quality internet broadcasts.
>
> 25.   Wilkowski told Greer and Floyd that Advanced Equities was significantly involved with Pixelon and was planning to have several representatives from Advances Equities on Pixelon's board of directors.
>
> 26.   Wilkowski also told Greer and Floyd that the principals of Advanced Equities had invested in Pixelon because they viewed it as a good investment.
>
> 27.   Defendants had been working with Pixelon for several months prior to their discussions with Greer and Floyd and had access to all of Pixelon's senior level managers, books, records, contracts, and financial information.  Wilkowski told Greer and Floyd that Advanced Equities was very familiar with Pixelon and its management.
>
> 29.   Advanced Equities prepared an Amended and Restated Private Placement Memorandum dated August 25, 1999 (the "Placement Memorandum") used to solicit investors to purchase Series A Preferred Stock in Pixelon.  In addition to participating in the preparation of the Placement Memorandum, Wilkowski, Wiskowski, Daubenspeck, and Badger reviewed and approved the use of the Placement Memorandum and the representations in the Placement Memorandum in connection with the sale of Pixelon stock to Greer and Floyd.

As noted by the defendants, nothing in the CAC alleges how or why these statements were false.  In addition, nothing therein contains any information on exactly when certain statements were made, where they were made, and how they were communicated to the plaintiffs.

The plaintiffs also point to paragraphs 39, 41-42, and 44-45, in support of their contention

that they have properly pleaded this aspect of Count III with particularity. Without restating all of these paragraphs in full here, the court notes that the defendants assert that such statements are not actionable under Section 12(a)(2) because they were purportedly made after the time of the sale of the securities:

> For purposes of section 12(a)(2) of the Act only, and without affecting any other rights a purchaser may have, for purposes of determining whether a prospectus or oral statement included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading at the time of sale (including, without limitation, a contract of sale), *any information conveyed to the purchaser only after such time of sale (including such contract of sale) will not be taken into account*.

17 C.F.R. § 230.159(a). The plaintiffs do not respond to this argument and the court agrees that, under this regulation, any statement made after the plaintiffs' investment is not actionable; therefore, the plaintiffs cannot rely on them in establishing a violation of Section 12(a)(2).

Accordingly, the court grants the defendants' motion to dismiss Count III. The plaintiffs may replead within 21 days of the date of entry of this order to the extent possible consistent with this order.

**B. Count IV–§ 10(b) of the Securities Exchange Act and Rule 10b-5 (against Advanced Equities, Daubenspeck and Badger)**

The plaintiffs also allege that the defendants violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. 240.10b-5, by making fraudulent statements and omissions of material fact in connection with the sale of Pixelon stock to the plaintiffs.

### 1. Statute of Limitations

Given that the parties refer to their original arguments on the statute of limitations issue under Section 12(a)(2), the court denies the defendants' motion to dismiss the claim under Section 10(b) on statute of limitations grounds for the same reason discussed above.

### 2. PSLRA Requirements

To prevail on a claim of securities fraud under § 10(b) of the Securities and Exchange Act and SEC Rule 10b-5, a plaintiff must establish each of the following elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

In addition, the Private Securities Litigation Reform Act ("PSLRA"), which amended the Securities Exchange Act, provides that a securities fraud complaint must (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). According to the PSLRA, "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." 15 U.S.C. § 78u-4(b)(3)(A). The defendants contend that the CAC fails to satisfy both prongs of this section of the PSLRA.

The court first notes that, while unmentioned by the parties, the issue of whether the PSLRA applies to non-class actions, like this case, has been raised in other cases. The Seventh Circuit has stated in passing that the "PSLRA applies only to a 'suit that is brought as a plaintiff class action, 15 U.S.C. § 78u-4(a)(1). . . .'" *Higginbotham v. Baxter International*, 495 F.3d 753, 756 (7th Cir. 2007). However, other courts, noting the language of the statute, have held that while certain sections of the PSLRA apply to class actions, other provisions (including the heightened pleading provision at issue here) apply to "any private action arising under this chapter" regardless of whether it is styled as a class action. For example, in *Erickson v. Horing*, No. 99-1468 (JRT/FLN), 2000 WL 35500986 (D. Minn. Oct. 23, 2000), the court addressed the plaintiffs' assertion that "the PSLRA only applies to class actions." *Id.* at *6. The *Erickson* court first noted the same language cited by the Seventh Circuit in § 78u-4(a), which states that "[t]he provisions of this subsection shall apply in each private action under this chapter that is brought as a class action pursuant to the Federal Rules of Civil Procedure."). However, it then noted that "the PSLRA's heightened pleading standard, as well as [other requirements] do not appear in subsection (a) and are thus not subject to that subsection's limited application [to class actions]." *Id*. Instead, the heightened pleading subsection states that it shall apply to "any private action arising under this chapter." *Id*. (citing in relevant part § 78u-4(b)(1)). The *Erickson* court concluded that "the plain meaning of this broader language renders these provisions applicable to individual as well as class suits." *Id*. (citing cases).

The court agrees with the reasoning of the *Erickson* court and concludes that the heightened pleading standard applies to the plaintiffs' claims, even though the case is not styled as a class action.

a.      *Specificity*

As to Count IV, the defendants assert that the plaintiffs fail to specify each statement that they contend was misleading and the reasons why the statements were misleading as required by the PSLRA.

According to the plaintiffs, the misrepresentations in both the fall of 1999 and in the

Placement Memorandum by which the defendants allegedly induced the plaintiffs to purchase Pixelon stock are detailed in the case.  The plaintiffs assert that:

> Had Defendants informed Greer and Floyd that Stanley was a fugitive, that Pixelon was not a stable investment, that the technology Pixelon planned to profit from was nothing new to the market, that there were both financial and internal problems brewing in the company, or that substantially more money was needed to operate the company and pay for the launch event, neither Greer or [sic] Floyd would have invested the nearly $2 million with Defendants.  Knowing this, Defendants lied about the financial condition of Pixelon, about the proprietary nature of the technology behind Pixelon, about how much Pixelon would need to sustain operations, and about the individuals running Pixelon.  (Am. Comp. ¶¶ 12, 16, 78-79).

Unfortunately, the plaintiff's argument in this regard is lacking in details.  While the defendants argue that the plaintiffs have failed to specify each misleading statement and why it was misleading, the plaintiffs essentially argue in response "yes, we did."  Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements require that the plaintiff allege the statements it believes are misleading and why.  There is simply no room, nor reason for, vague and non-specific arguments.  The inquiry should be relatively quite simple. The plaintiffs should set forth the exact paragraphs in the CAC that specify the misleading statements as well as the paragraphs that state why these statements were misleading.

The only paragraphs actually cited by the plaintiffs, ¶¶ 12, 16, 78-79, state as follows:

> 12.    Pixelon, Inc. ("Pixelon") was, at all relevant times, a California corporation with its principal place of business in San Juan Capsitrano, California.  Defendants represented Pixelon to be in the business of providing streaming technology to broadcast audio and video over the internet.  Pixelon claimed to be the first full-screen, full-motion, TV-quality internet broadcaster.
> . . .
> 16.    At the time of defendants' representations to Greer and Floyd regarding their investment in Pixelon, all defendants knew or should have known, Stanley was a fugitive from Virginia authorities after being convicted of embezzling $1.25 million from members of his father's church.  Stanley was forced to resign from Pixelon for waste and mismanagement a few weeks after the defendants told Greer and Floyd that Stanley was essential to Pixelon's success and Greer and Floyd invested nearly $2 million in Pixelon.  On information and belief Stanley is incarcerated in Virginia.
> . . .
> 78.    In May 2000, Pixelon admitted that its claims regarding the technology were not true.  Pixelon admitted that it had affirmatively misled investors

and the public regarding the nature and capabilities of its technology.

. . .

79.    Pixelon admitted its technology was not unique or proprietary technology as it and Advanced Technologies had claimed, but actually was an adaptation of a common Windows Media Player computer program.

As to the individual defendants, Daubenspeck and Badger, the plaintiffs point to no allegations regarding the specific statements each of them purportedly made or why the statements were false. Indeed, the plaintiffs fail to set forth any specific statements made by the individual defendants. As a result, as to alleged misrepresentations made by the individual defendants, Count IV fails to satisfy both Rule 9(b) as well as the specificity requirement of § 78u-4(b)(1) and the motion to dismiss the count as to the individual defendants is granted.

As to the written statements and omissions in the Placement Memorandum, the plaintiffs point out, albeit in different sections of their motion to dismiss, which statements were allegedly false and why they were false.[3] Accordingly, the court denies the motion to dismiss this count as to the statements and omissions in the Placement Memorandum.

b.    *Scienter*

The defendants next argue that the plaintiffs have failed to properly allege scienter with respect to this count. As noted recently by the Seventh Circuit:

> The PSLRA provides that the complaint in a securities fraud action must "with respect to each act or omission ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The "required state of mind" in a § 10(b) case is scienter, which means "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." The Supreme Court has directed us to dismiss the complaint unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Accordingly, we must weigh the strength of the plaintiffs' inferences in comparison to plausible nonculpable explanations for the defendants' conduct. We have rejected the "group pleading doctrine," a judicial presumption that statements in group-published documents are attributable to officers who have daily involvement in company operations; thus, the plaintiffs must create a strong inference of scienter with respect to each individual defendant.

_____

[3]The court notes that, in this section of their response to the motion to dismiss, the plaintiffs do not set forth exactly which statements in the Placement Memorandum they allege were false. However, the court has assumed the plaintiffs intended to rely on the same purportedly false statements identified in other sections of the response to the motion to dismiss and discussed in Part III.A.2. and Part III.B.2.b of this order.

*Pugh v. Tribune Co.*, 521 F.3d 686, 693-94 (7ᵗʰ Cir. 2008)(internal citations omitted). As further noted by the Supreme Court, "the inference of scienter must be more than merely 'reasonable' or 'permissible'–it must be cogent and compelling." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, --- U.S. ----, 127 S.Ct. 2499, 2510 (2007).

The plaintiffs do not address *Tellabs* or its progeny and instead point to a 1977 Seventh Circuit case, *Sunstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7ᵗʰ Cir. 1977), in support of their position that they have properly alleged reckless omissions. *Id.* (defendant can be held liable under Section 10(b) for making a "reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with the sale or purchase of securities"). According to the plaintiffs:

- Defendants created the Placement Memorandum and knew that it contained false statements
- Defendants used the Placement Memorandum to induce Greer and Floyd to purchase Pixelon stock
- Defendants deceived Greer and Floyd into reasonably believing that Pixelon was a financially stable company, when they knew in reality that it was struggling to stay afloat
- Defendants also led Greer and Floyd to believe that they would have a much stronger stock value in Pixelon than was actually true
- Not only did Defendants make these knowingly false statements but they also actively withheld information from Greer and Floyd about the fact that Pixelon and its senior management were overspending and mismanaging Pixelon's finances
- Defendants also led Greer and Floyd to believe that Stanley was the brilliant mind behind the new up and coming technology and failed to inform Greer and Floyd that in reality, they knew that Stanley was a fugitive running from the law and that the technology was a fraud
- Defendants knowingly kept secret the fact that prior to October 22, 1999, Pixelon was involved with various employment disputes and resignations involving significant managerial positions, such as the COO, CEO, and CFO

One problem with the plaintiffs' allegations is that they fail to create a strong inference of scienter with respect to each individual defendant. The plaintiffs' consistent reference to "defendants" does not meet the requirements of pleading scienter with particularity under the PLSRA. *Pugh,* 521 F.3d at 693 ("[T]he plaintiffs must create a strong inference of scienter with respect to each individual defendant."). Indeed, never once does the complaint name specific actions or statements made by a particular defendant. Thus, the allegations fail on this basis alone.

In addition, the allegations fail to set forth any factual basis for the proposition that the defendants knew or recklessly disregarded a substantial risk that the allegedly misleading information was false. Simply stating so is insufficient. *See, e.g., Roth*, 527 F. Supp. 2d at 801 ("[The p]laintiffs do not allege specific facts that demonstrate that any of the defendants knew about the deficiencies in the Company's internal controls or that those deficiencies were obvious."). Ultimately, the plaintiffs point to no facts in support of their allegations that each defendant was recklessly indifferent to or knew that: Stanley was a fugitive and had embezzled from his prior company[4]; Pixelon needed more funds than was initially set forth in the Placement Memorandum; the capitalization of the company was not what was represented in the Placement Memorandum; Pixelon was involved in various employment disputes with key executives; or that Pixelon misrepresented the technology upon which Pixelon was based. As to this last point, it is alleged in paragraphs 78 and 79 of the CAC that Pixelon admitted in May 2000, approximately 7 months after the plaintiffs invested, that its claims regarding the unique and proprietary nature of its technology were not true and that it had misled investors. But Pixelon is not a defendant and the plaintiffs have failed to state in the CAC any facts which indicate how or why each defendant knew about or was reckelssly indifferent to Pixelon's misrepresentations.

The plaintiffs do not point to any "concrete evidence", *Higginbotham*, 495 F.3d at 757, such as letters, e-mails, or testimony of confidential witnesses, which could establish that each of the defendants knew of the purported misleading statements and material omissions at the time they were made. *Id.* (affirming dismissal of § 10(b) claim in part because "Plaintiffs d[id] not proffer concrete evidence that anyone at Baxter's headquarters in the United States knew of the shenanigans in Brazil until May 2004").

Under the test as set forth in *Tellabs*, the plaintiffs have not pointed to any facts establishing a cogent and at least as compelling inference of scienter as any opposing inference. Indeed, the plaintiffs allege that the defendants told the plaintiffs in November 1999, at the time that the defendants approached the plaintiffs to invest more money, that Stanley had been engaging in mismanagement and was leaving the company. CAC at ¶ 44. Thus, one can infer from the plaintiffs own allegations that the defendants were forthcoming when they found out about problems associated with Pixelon and that no intent to deceive existed.

The defendants' motion to dismiss Count IV is granted. The plaintiffs are granted leave to file an amended complaint within 21 days.

C.      **Count V–Section 10(b) of the Securities Exchange Act and Rule 10b-5 (against Daubenspeck and Badger)**

---

[4]In any event, information regarding the alleged arrest and conviction of Stanley was public information, which Section 10(b) does not require be "disclosed." *See Higginbotham*, 495 F.3d at 759 ("The securities laws do not require firms to "disclose" information that is already in the public domain.").

In a separate count, the plaintiffs allege that Daubenspeck and Badger violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 by making misrepresentations and material omissions in association with the securities that were to be transferred to the plaintiffs pursuant to the Consulting Agreement.

1.       *Statute of Limitations/Repose*

As with the Counts III and IV, the defendants assert that this claim is time-barred.  At the time the plaintiffs entered into the Consulting Agreement that is the basis of this claim, any action under Section 10(b) had to be brought within one year after the discovery of the facts constituting the violation or within three years after such violation.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 (1991).  However, "[a]s part of the Sarbanes-Oxley Act, Congress changed the allowable time to the shorter of two years from discovery or five years from the improper transactions."  *Foss v. Bear, Stearns & Co., Inc.* 394 F.3d 540, 541 (7th Cir. 2005).  But Sarbanes-Oxley is not retroactive and thus, "does not revive claims that had expired, under the one-year statute of limitations, before July 30, 2002." *In re Motorola Securities Litigation*, 505 F. Supp.2d 501, 525 (N.D. Ill. 2007)(citation omitted).

Accordingly, the defendants contend that even assuming Sarbanes-Oxley extended the statute of repose to five years from the date of the alleged improper transactions, the claims would have been barred as of September 18, 2005, given that the Consulting Agreement was entered into on September 18, 2000.  Thus, the defendants argue that this claim is time-barred.

Instead of relying on equitable estoppel, the plaintiffs rely here on the alleged tolling agreements, which they contend state that the defendants would not assert a statute of repose defense to any claims arising out of the Pixelon investment.  While the plaintiffs refer to tolling agreements–plural, no specifics are alleged regarding any additional tolling agreements other than the one attached to the defendants' motion to dismiss.  *See* n.1, supra.  Nevertheless, the plaintiffs contend in their response to the motion to dismiss that "on October 17, 2001, the parties signed the *first of the Tolling Agreements*".  Response, Dkt. # 34, at 8 (emphasis added). Thus, according to the plaintiffs, multiple tolling agreements exist which prevent the defendants from relying on the statute of limitations or the statute of repose.

The defendants disagree.  The defendants point out that the tolling agreement states that the "[t]he Parties agree that, in the event litigation is commenced regarding Greer's and Floyd's investment in Pixelon, the Parties will not rely upon any defense, point of law or argument based upon the passage of time that occurs while this agreement is in place and for thirty days after the date on which this Agreement terminates, including, without limitation, statutes of limitation, statutes of repose, and/or laches."  According to the defendants, Count V arises out of alleged fraud related to the Consulting Agreement, and is not "regarding Greer's and Floyd's investment in Pixelon" as provided in the tolling agreement.  Alternatively, the defendants argue that Count V is really only a breach of contract claim related to the Consulting Agreement.  Under either interpretation, the defendants assert that because the language of the tolling agreement does not

encompass the plaintiffs' claim under Count V, they cannot rely on the tolling agreement to rebut the statute of repose. As would be expected, the plaintiffs respond that the tolling agreement does apply because the "Consulting Agreement arises out of Greer's and Floyd's investment in Pixelon and was an express effort by Defendants to resolve that dispute." Response, Dkt. #34 at 8.

The court notes at the outset that it has already stated that it is not going to consider the tolling agreement attached to the defendants' motion to dismiss. *See* n.1, supra. Even if the court were to consider the defendants' argument, they are asking the court to construe the terms of a tolling agreement with no factual development of the record. Given that this argument is made in the context of a motion to dismiss based on a statute of limitations defense, which, as described above, the plaintiffs need not plead around, the court is not in a position to properly consider it.

The defendants' motion to dismiss Count V based on the statute of limitations is denied without prejudice to being raised at the appropriate time.

2. *PSLRA–Scienter*

The defendants next assert that, as with Count IV, the plaintiffs have failed to plead scienter with particularity as required under the PSLRA. Count V alleges that "Daubenspeck and Badger violated Section 10(b) of the Securities [Exchange] Act of 1933 [sic] and Rule 10b-5 by using instruments of interstate commerce to make knowingly false statements of material fact and omissions of material in connection with the sale of the securities identified in the Consulting Agreement to Greer and Floyd." CAC at ¶ 167. In their response to the motion to dismiss, the plaintiffs assert that after they confronted the defendants "with their misconduct relating to Pixelon," the defendants suggested that they enter into the Consulting Agreement to make the plaintiffs "whole for their worthless investment in Pixelon." Response, Dkt. #34 at 14. Pursuant to the terms of the Consulting Agreement, the defendants were to "convey interests in certain ventures to Greer and Floyd" but the defendants never fulfilled their obligations. *Id*. According to the plaintiffs, "[b]y utterly failing to comply with any of their obligation under the Consulting Agreement, the allegations give a strong inference that the Consulting Agreement was nothing more than another attempt to deceive Greer and Floyd. . . ." *Id*. at 15.

As an initial matter, this court agrees with the defendants cursory observation that this count seems like a breach of contract count dressed up as a federal securities claim. However, because the parties do not substantively address this issue, the court will not either. Nevertheless, the court agrees that the allegations fail to plead scienter under the PSLRA. The allegations simply state that Daubenspeck and Badger promised to transfer certain securities pursuant to the Consulting Agreement and that they failed to do so. The CAC is devoid of any facts from which one could ascertain a cogent and compelling inference of scienter. Accordingly, the motion to dismiss Count V is granted. The plaintiffs are granted 21 days from the date of entry of this order to replead.

**D.      Counts I, II, and VI–State Law Claims**

The plaintiffs also allege in the CAC three state law claims for breach of contract, breach of fiduciary duty and common law fraud.  Because the court has dismissed without prejudice the federal claims, it declines to exercise supplemental jurisdiction over the state law claims.

**IV.      Conclusion**

For the reasons stated herein, the defendants' motion to dismiss [26-1] is granted in part. The plaintiffs are given 21 days from the date of entry of this order to replead.

**ENTER:**


**DATE:** June 19, 2009                                     _Blanche M. Manning_____

                                                            **Blanche M. Manning**
                                                            **United States District Judge**